## STATE OF CONNECTICUT *v.* ALBERT VINCENT

SUPERIOR COURT      NEW LONDON COUNTY      FILE No. 6728

Memorandum filed April 21, 1961[1]

[1] Publication of this decision was determined upon after an appeal to the Supreme Court of Errors was withdrawn.

*Allyn L. Brown, Jr.,* state's attorney, for the state.

*George Gilman,* public defender, of Norwich, for the defendant.

COTTER, J. The accused stands informed against in the first count of the information for the offense of arson, which occurred on February 20, 1961. He has entered a plea of former jeopardy in bar in that it is claimed he was informed against and convicted upon the same issue and further prosecution would violate the fifth amendment to the constitution of the United States.

On February 21, 1961, upon information and complaint of an offense committed on February 20, 1961, he was presented for attempted arson (General Statutes § 53-85) in the Circuit Court in the tenth circuit. He entered a plea of nolo contendere which was accepted, and the court ordered a presentence report for March 7, 1961, and placed him under bond of $1500. In the course of the presentation, the prosecuting attorney stated that the accused "set fire to some curtains in his home. The flames burnt part of the curtains, and the wife put out the fire." The prosecuting attorney further stated: "The reason I changed it to attempted arson and felt that arson was not the charge is because I don't feel that the State could prove arson. I don't feel there was burning of any of the building. I feel that there was an attempt to burn the building but the act had not gone far enough for actual arson and, therefore, the charge of attempted arson, in my mind, was a proper one." The accused then told his version of the event, stating that there was a burning but that he did not intend to light the fire. The court set bond and ordered a presentence report,

stating: "When I get the presentence, I will make a disposition in this case."

On March 7, 1961, the date set for disposition, the accused appeared, and the prosecuting attorney, with the accused present, proceeded as follows: "If your Honor please, at this time I would like to petition the Court that the accused have the right to withdraw his plea of nolo and the finding of guilty be withdrawn on the particular matter of arson." The prosecutor then proceeded to give his reasons for such a request, claiming there was now a doubt in his mind whether the accused, upon the evidence the prosecutor had, was guilty of attempted arson, and stating: "So, a review of all the facts certainly convinces me at least that the crime of arson, attempted arson, is too serious to place before this man, and his plea should be withdrawn. I have made a substituted complaint. I think the proper charge for this man is breach of peace." Thereupon, the court accepted a nolle of attempted arson and stated, after reading the presentence report, that it agreed with such a procedure and ordered the plea withdrawn. The accused then entered a plea of guilty to breach of peace and was sentenced to jail for ninety days, execution suspended, probation one year.

Thereafter, on March 15, 1961, the accused was again presented before the same court on a warrant issued by it on a charge of arson allegedly committed on February 20, and was presented for probable cause. The accused then claimed that he had "plead nolo to that charge once before" and that it was a revival of the same charge. During the course of the presentment, the court told the accused that "there is additional evidence that has come to the Court . . . . Some new evidence has been learned of."

The foregoing circumstances are unusual. On February 21, the accused appeared and pleaded, a presentence report was ordered, the charge was changed on March 7, and he was sentenced. Then he was brought in again, after he felt the hearings were over, and charged all over again on March 15.

The informations and transcript of all proceedings have been admitted as full exhibits, and it is agreed that the court determine the matter on the plea.

An accused has the right to know when the accusations against him are at an end and not have the hanging sword of justice hovering over his neck and be unable to determine when his case has been finally adjudicated. It is unusual justice to receive a sentence and then more than a week later be hauled in and presented again, and again faced with a new trip to a penal institution. The administration of justice requires careful, considerate, deliberate, determinate and final decision. Common to all systems of jurisprudence is the maxim that there be a finality to judicial proceedings. *State* v. *Lee,* 65 Conn. 265, 271: " 'That no one shall be put in jeopardy twice for the same offense, is a universal maxim thought worthy to be incorporated, to a certain extent, into the Constitution of the United States; and that an acquittal or conviction by a court having jurisdiction, on a sufficient indictment or information, is in all cases whatsoever a bar, is equally clear.' *State* v. *Benham,* 7 Conn., 418. This maxim is based upon a principle common to all systems of jurisprudence, *i. e.,* the finality of judicial proceedings. Broom's Legal Maxims, p. 312. If questions once tried and determined could be again agitated at the option of the parties, one main object of any administration of justice would be defeated. The function of courts is to settle controversies

according to law. The object of settlement is secured by the principle of finality of judgments. *Finis finem litibus imponit.*"

The constitution of Connecticut contains no provision against double jeopardy such as is found in the fifth amendment to the constitution of the United States. *State* v. *Palko,* 122 Conn. 529, 538. The provision of the constitution of the United States does not bind the states but applies only to offenses against and trials under the laws of the United States. *Brock* v. *North Carolina,* 344 U.S. 424, 426. However, the doctrine that no one shall be twice put in jeopardy for the same offense has become firmly embedded in our common law, and jeopardy designates the danger of conviction and punishment incurred by the accused when a valid information is presented. *State* v. *Lee,* supra; *Kepner* v. *United States,* 195 U.S. 100; see notes, 122 A.L.R. 1443, 8 A.L.R.2d 285. Jeopardy ordinarily attaches when an accused has been placed on trial on a valid information before a court of competent jurisdiction, has been arraigned and has pleaded, and, if the trial is by court, when the trial has begun. *McCarthy* v. *Zerbst,* 85 F.2d 640 (10th Cir.), cert. denied, 299 U.S. 610; see 22 C.J.S. 640, Criminal Law, § 241 n.69; 15 Am. Jur., Criminal Law, § 369. And it is not the verdict or judgment which places a prisoner in jeopardy. *People ex rel. Meyer* v. *Warden,* 269 N.Y. 426. Double jeopardy does not depend upon the result of the trial but the fact of the trial. *Green* v. *United States,* 355 U.S. 184, 61 A.L.R.2d 1119 & note, 1141; 22 C.J.S. 642, Criminal Law, § 243 n.88; 15 Am. Jur. 46, Criminal Law, § 369 n.11.

There are two cases in our jurisdiction clearly in point in which the Supreme Court of Errors held that a conviction for attempted rape is a bar to a prosecution for rape; *State* v. *Shepard,* 7 Conn. 54;

and that an acquittal of receiving stolen goods bars trial of the same person for theft. *State* v. *Fox,* 83 Conn. 286. The test is whether the same evidence would sustain a conviction in either case. *Wilson* v. *State,* 24 Conn. 57. Where the court had no jurisdiction, there would be no double jeopardy; *State* v. *Farrand,* 1 Root 446; but this is not the case here, where the Circuit Court had concurrent jurisdiction with the Superior Court of attempted arson. Public Acts 1959, No. 28, § 25 (as amended, General Statutes § 54-1a), provided that "in a prosecution for any crime the punishment for which may be a fine of not more than one thousand dollars or imprisonment for not more than five years or both, the circuit court may take final jurisdiction thereof, whenever, upon conviction, the court determines that no greater punishment ought to be imposed than that which it may lawfully inflict; but, if such offense is of so aggravated a nature as to require a greater punishment, the court shall bind over the accused to the criminal session of the court having jurisdiction of the offense next to be held in the county in which the offense was committed." See § 53-85.

In general, the two offenses need not be identical in nature, but similarity is sufficient, where the question arises whether or not the offense for which the conviction was had must be identical in nature with the principal offense charged; note, 58 A.L.R. 20, 30; see *State* v. *Vandemark,* 77 Conn. 201; *State* v. *Andrews,* 108 Conn. 209; *State* v. *Camera,* 132 Conn. 247; and a conviction of assault with intent to murder bars prosecution for aggravated assault in the same transaction. *State* v. *Mele,* 140 Conn. 398, 403.

Our court has gone so far as to hold that according to the ordinary use of the term a person is convicted when he has been found guilty or has pleaded

guilty, although there has been no sentence or judgment by the court. *Quintard* v. *Knoedler,* 53 Conn. 485.

It has been stated that the idea underlying the prohibition against double jeopardy, one that is deeply engrained in the Anglo-American systems of jurisprudence, is that the state, with all its resources and powers, should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continued state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. 1 Wharton, Criminal Law and Procedure, p. 301.

To constitute a waiver upon the part of the accused, it must appear there was the intentional relinquishment of a known right. *Ward* v. *Metropolitan Life Ins. Co.,* 66 Conn. 227, 240; *Hoxie* v. *Home Ins. Co.,* 32 Conn. 21, 40. There is nothing in the evidence, consisting of the transcripts or information, to permit such a finding, and this evidence points to the contrary. This is different from the situation where the statute requires the accused to assert a right to a jury of twelve, otherwise the failure to do so constitutes a waiver in itself irrespective of the state of mind of the accused. *State* v. *Perrella,* 144 Conn. 228, 232. Where the accused, unrepresented by counsel, entered a plea, the case was continued for presentence investigation report and disposition, and the accused was then, at the time of sentencing, told by the prosecuting attorney that he thought the proper charge was breach of peace rather than attempted arson, the accused would naturally agree to such a substituted complaint, not knowing that about a week later he would be then charged with the crime of arson. The record

is clear that the court intended to dispose of the matter at the time, once and for all, as it did. However, the finality did not remain.

Under the *Quintard* case, supra, there was a conviction of attempted arson under the proceedings, and effort now to charge the accused of arson upon the same facts constitutes double jeopardy and flies in the face of the *Shepard* and *Fox* cases, supra.

A recent annotation, 75 A.L.R.2d 683, annotates a case very similar to the situation before the court in the present case. *Markiewcz* v. *Black,* 138 Colo. 128, 133, 75 A.L.R.2d 678. Two accused prisoners pleaded guilty on December 20, 1957, and the matter was continued until January 16, 1958, for presentence report and consideration of application for probation. The court at that time found the plea to be unwarranted and thereupon dismissed the case and discharged the defendants. The court did "not pass on the propriety of this order—right or wrong," but held that the "petitioners were in jeopardy."

The plea in bar to the first count of the information is sustained.